c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MARK GOLDSTEIN, *ET AL.*, Plaintiff | CIVIL ACTION NO. 1:23-CV-00899 |
| VERSUS | CHIEF JUDGE DOUGHTY |
| MARK WOOD, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS SHERIFF OF RAPIDES PARISH, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court are two Rule 12(b)(6) Motions to Dismiss (ECF Nos. 8, 20) filed by Defendant Rapides Parish Police Jury ("RPPJ"). RPPJ seeks dismissal of all claims against it on the basis that no federal (or state) vicarious liability lies with a parish governing body for the actions of a sheriff or sheriff's employees or deputies. Plaintiffs Mark Goldstein ("Goldstein") and Lester Larkai ("Larkai") ("Plaintiffs") oppose. ECF No. 16.

Because Plaintiffs state a viable claim against RPPJ under *Monell*, RPPJ's Motions to Dismiss (ECF Nos. 8, 20) should be DENIED IN PART. Because Goldstein's *Monell* claim is the sole claim against RPPJ, RPPJ's Motions to Dismiss should be GRANTED IN PART to the extent they seek dismissal of any claims by Larkai against RPPJ.

I. <u>Background</u>

Plaintiffs filed a civil rights Complaint under 42 U.S.C. § 1983 against: Defendants Mark Wood ("Wood"), in his individual and official capacity as sheriff of Rapides Parish; Justin Johnson ("Johnson"); RRPJ; Nortec, L.L.C. ("Nortec"); Nurse Jane Doe; Lt. Shannon; Deputy John Doe 1; Deputy John Doe 2; and Deputy Jane Doe (collectively, "Defendants"). ECF No. 1.

On July 7, 2022, Plaintiffs were arrested by the Rapides Parish Sheriff's Office ("RPSO") Rapides Area Drug Enforcement ("RADE") unit while traveling through Rapides Parish in a U-Haul for the purpose of moving from California to Florida. ECF No. 19 at 4. Goldstein paid Larkai, an employee in Goldstein's Amazon delivery business, to fly from New York to Nevada to help him. *Id.* at 5. Johnson pulled Plaintiffs over for allegedly driving over the centerline of the interstate. *Id.* at 6. Four other RADE deputies arrived on the scene: Lt. Shannon, Deputy Jane Doe, Deputy John Doe 1, and Deputy John Doe 2. *Id.* at 9. Plaintiffs claim they were arrested due to an unlawful search and seizure for alleged narcotics, of which all charges were ultimately dismissed by the district attorney on August 9, 2022. *Id.* at 19.

Plaintiffs allege that once they arrived at the Rapides Parish Detention Center (Center 1) ("DC-1"), Goldstein asked for water and to make a phone call but was ignored. *Id.* at 28. He claims that, after waiting some time, he was taken to a medical area/nurses' office at DC-1 for medical evaluation. *Id.* at 29. During Goldstein's medical evaluation, Nurse Jane Doe, an employee of RPSO (and allegedly a former employee of Nortec), took his blood pressure and asked him various questions. *Id.*

Goldstein claims his blood pressure was 188/95. *Id.* He also told Nurse Jane Doe he was feeling very weak, faint, light-headed, and hypoglycemic. *Id.* He told Nurse Jane Doe something was wrong, and he needed medical attention. *Id.* Plaintiffs claim she ignored Goldstein's complaints and requests for medical attention, and did not provide him with any food or water. *Id.*

Plaintiffs further allege Nurse Jane Doe did not do anything about, or express any concern over, his blood pressure, even though it was indicative of Hypertension Stage 3 – a medical emergency requiring hospitalization and immediate medical attention. *Id.* After being evaluated, Goldstein was strip-searched, where he again expressed he wasn't feeling well and was ignored. *Id.* at 30. Goldstein was then brought to a holding cell with Larkai, where he continued to tell DC-1 officials/staff he was not feeling well, needed water, and to make a phone call. *Id.* He claims he was ignored and sat for hours in the holding cell without food, water, medical attention, or phone calls. *Id.*

Goldstein was later taken for additional questioning by jail officials, at which time he complained again about not feeling well. *Id.* He again repeated his complaints to Nurse Jane Doe. *Id.* Plaintiffs allege DC-1 officials, staff, and Nurse Jane Doe continued to ignore Goldstein's medical condition and complaints, and just threw him back in the holding cell without food, water, or medical attention. *Id.* at 31. Plaintiffs state neither Nurse Jane Doe nor DC-1 officials or staff questioned or inquired into Goldstein's medical emergency or complaints, and that no one contacted emergency medical services for further assistance. *Id.* Plaintiffs claim that the

inactions or actions of DC-1 officials or staff, including Nurse Jane Does, showed deliberate indifference to Goldstein's serious medical needs. *Id.*

Goldstein and Larkai were ultimately released at 6:30 p.m. on July 7, 2022, checked into a hotel. Goldstein collapsed while walking down the hall. *Id.* at 31-32. Goldstein was taken via ambulance to the hospital where he was diagnosed and treated for an acute ischemic left MCA stroke, acute ischemic right MCA stroke, hypokalemia, and acute kidney injury. *Id.* at 32. Goldstein claims that the failure to recognize he was suffering from a serious medical condition requiring immediate medical attention and the failure to provide any medical attention and treatment caused permanent injuries and damages. *Id.*

Plaintiffs originally alleged Nortec was the private medical and mental health care provider under contract with the RPSO and/or the RPPJ to provide medical care and mental health treatment to detainees and inmates at the Rapides Parish Detention Centers, including staffing, training, supervision, policies, and procedures for personnel. ECF No. 1.

Plaintiffs allege the following counts: (1) unlawful searches and seizures against Deputy Johnson, Deputy Jane Doe, and Deputy John Doe 1 in violation of the Fourth Amendment; (2) a violation of the Equal Protection Clause against Deputy Johnson; (3) failure to intervene/bystander liability against Lt. Shannon and Deputy John Doe 2; (4) *Monell* claims against Wood, in his individual and official capacity; (5) a claim against Nurse Jane Doe for denial of reasonable medical care to a pre-trial detainee, and deliberate indifference to Goldstein's constitutional right to adequate

4

health care; (6) *Monell* claims against Wood, in his official capacity, Nortec, and RPPJ for denial of reasonable medical care to a pre-trial detainee and deliberate indifference to Goldstein's constitutional right to adequate health care; (7) state tort claims against Nurse Jane Doe for denial of medical care; (8) state tort claims against Wood, in his official capacity, and Nortec, for denial of medical care/attention and intentional infliction of emotional distress under *respondeat superior*/vicarious liability under La. Civ. Code arts. 2320 and 2317; and (9) state tort claims against Wood, Deputy Johnson, Lt. Shannon, Deputy Jane Doe, Deputy John Doe 1, and Deputy John Doe 2 for negligent and intentional infliction of emotional distress, negligent hiring, negligent retention, and negligent supervision. *Id.* at 43-61.

On September 1, 2023, RPPJ filed this Motion to Dismiss (ECF No. 8). On September 20, 2023, Wood and Johnson answered. ECF No. 12.

Upon learning that Nortec had no contract at the time of the alleged incident on July 7, 2022, and that no Nortec employees were working at the detention center at that time, Plaintiffs filed a First Amended Petition for Damages ("Amended Complaint") (ECF No. 19), removing all claims against Nortec. Plaintiffs also amended to allege Wood had authority and responsibility for providing medical and mental health treatment and care, including staffing, training, supervision, policies, and procedures for medical care and mental health personnel at the time of the alleged incident on July 7, 2022. ECF No. 19. Plaintiffs also supplemented allegations against RPPJ. *Id.*

Plaintiffs alleged that Wood, DC-1 staff, and RPPJ failed to provide Goldstein with safe conditions of confinement by intentionally denying him medical care and treatment while he was a pre-trial detainee and failed to provided Goldstein with medical care and treatment in response to his serious medical condition causing him to suffer serious harm. *Id.* at 35. Plaintiffs allege RPPJ was on notice that detainees and inmates were being denied adequate medical treatment. *Id.* at 40. Yet, Wood, DC-1 staff, or the RPPJ did not change its policies and practices for assessing, providing, and responding to the health concerns and requests for medical attention by detainees and inmates. *Id.*

Specifically, Plaintiffs claim RPSO had a contract with Nortec from 2015 to December 31, 2021 to provide medical and mental health treatment to detainees and inmates at DC-1 under La. R.S. 15:703. *Id.* Plaintiffs allege that the predecessor sheriff had stated the contract was not cheap, but it helped solve issues with the treatment of prisoners after the closure of Huey P. Long Medical Center. *Id.* at 41. And RPPJ agreed to increase the funds to help cover the costs under the contract for trained, educated medical personnel for a full-time medical staff. *Id.* Plaintiffs claim, however, that RPSO, through Wood or RPPJ, terminated its contract with Nortec on December 31, 2021. *Id.* at 42. Thereafter, Wood and RPSO assumed the duty and responsibilities on January 1, 2022, to provide medical and mental health treatment to detainees and inmates, including Goldstein on July 7, 2022. *Id.* at 43.

Plaintiffs allege that after RPSO's termination of the Nortec contract on December 31, 2021, RPPJ failed to appoint a physician to attend detainees and

inmates, including Goldstein, pursuant to La. R.S. 15:703(D), and that there was no appointed physician to attend to his medical needs on July 7, 2022. *Id.* Plaintiffs claim RPSO, through Wood and/or RPPJ, terminated the contract to save money or use the money on other expenses, knowing it would leave the detention centers understaffed and ill-equipped to handle the healthcare needs of detainees and inmates. *Id.* at 43-44. Wood, RPPJ, and DC-1 staff thus knew, or should have known, of continuing serious deficiencies in polices, practices, and procedures at the jail for assessing, providing, and responding to the health conditions and health care requests of detainees and inmates, considering the termination of the Nortec contract. *Id.* And they should have known the staff that existed were inadequately trained or supervised to do the same. *Id.* Plaintiffs further allege this resulted in systemic deficiencies that showed the existence of a *de facto* policy of DC-1 staff failing to adequately assess, treat, and respond to the serious medical needs of detainees and inmates, resulting in deliberate indifference. *Id.* at 46.

RPPJ seeks dismissal of all federal and state claims against it in both the Complaint and Amended Complaint. ECF Nos. 8, 20. RPPJ claims there is no legal basis for a *Monell* and/or *respondeat superior* claim under federal or state law against it. *Id.* Thus, RPPJ argues Plaintiffs failed to state a viable claim against it. RPPJ also seeks attorney's fees and costs for Plaintiffs' allegedly frivolous claims against it and for Plaintiffs' refusal to voluntarily dismiss claims against it. *Id.*

Plaintiffs oppose. ECF No. 16. Plaintiffs assert the Amended Complaint cures any deficiencies as they now assert only a § 1983 cause of action on behalf of Goldstein

7

for denial of reasonable medical care to a pretrial detainee for which RPPJ is liable under *Monell*. *Id.*

## II. Law and Analysis

### A. Plaintiffs' allegations against RPPJ must raise a plausible right to relief.

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss all or part of a complaint for "failure to state a claim upon which relief can be granted."[1] But a complaint should not be dismissed "if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal citation and quotation omitted).

A complaint or claim is "facially plausible" when the facts alleged "allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal citation and quotation omitted). Factual allegations need not be detailed but must "raise a right to relief above the speculative level." *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020).

In deciding a motion to dismiss, a court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Id.* at 496. However, a court need not accept as true "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Arnold*, 979 F.3d at 266 (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (internal citation and quotation omitted)).

---

[1] And Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

B. 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). Municipalities are "persons" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. *Lugar v. Edmondson Oil Co., Inc.*, 475 U.S. 922, 937 (1982).

C. **Plaintiffs state a viable *Monell* claim on behalf of Goldstein against RPPJ.**

RPPJ seeks dismissal of all federal and state claims against it. ECF Nos. 8, 20. RPPJ is a local governing body that is a "person" within the meaning of § 1983. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694-95, 98 (1978). Under federal law, a parochial or municipal governing authority may not be held liable for a civil rights violation under theories of *respondeat superior* or vicarious liability. *Monell*, 436 U.S. at 691; *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003). Rather, under *Monell*, a plaintiff must demonstrate "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (*citing Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985) (*applying Monell* to a claim against a Louisiana police jury).

9

RPPJ may be held liable under § 1983 only where the execution of an unconstitutional policy or custom proximately causes a plaintiff's injuries. *Carter v. Strain*, No. 09-CV-0015, 2009 WL 3231826 at *2 (E.D. La. Oct. 1, 2009) (quoting *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007), *cert. denied*, 555 U.S. 813, 129 S.Ct. 42 (2008)). "'A plaintiff may not infer a policy merely because harm resulted from some interaction with a government entity.'" *Id.* (quoting *Colle v. Brazos County, Texas*, 982 F.2d 237, 245 (5th Cir. 1993)). Rather, the plaintiff "must identify the policy or custom which allegedly caused the deprivation of his constitutional rights." *Id.* (citing *Murray v. Town of Mansura*, 76 Fed.Appx. 547, 549 (5th Cir. 2003) and *Treece v. Louisiana*, 74 Fed.Appx. 315, 316 (5th Cir. 2003)).

Here, RPPJ seeks dismissal of allegations of vicarious liability against it. ECF No. 8-2 at 1. RPPJ agrees that it is responsible under La. R.S. 15:703 for the appointment annually of a physician to attend the prisoners confined to parish jails and "for the expenses of establishing, maintaining, and operating the parish jail and for all expenses of feeding, clothing, and providing medical equipment to parish prisoners[.]" ECF No. 8-2 at 3; *see* La. R.S. 15:703(A)-(D). However, RPPJ asserts it is not liable for any action arising from the actions or inactions of the physician or health care provider. *Id.* Notably, La. R.S. 15:703(D) provides for the liability of the governing authority for gross negligence or willful misconduct in performing its duties and obligations under the statute, where such conduct was a substantial factor in causing the injury. *Id.*; *see* La. R.S. 15:703(D).

RPPJ, however, claims that its obligations end with the appointment of a health care provider, and argues that a "health care provider" is repeatedly identified in the Complaint as Nortec. ECF Nos. 8-2 at 4, 1. Also, RPPJ cites to cases establishing that governing authorities cannot be vicariously liable for the acts of the sheriff or his deputies under state or federal law. ECF No. 8-2 at 4-7 (citing *Dugas v. City of Ville Platte*, 2017 WL 4238770 (W.D. La. 8/28/17) (holding that there can be no vicarious liability under *Monell* for the actions of a sheriff or his deputies). RPPJ further claims that Goldstein simply disagrees with his diagnosis and that the allegations show he was examined by a healthcare professional. ECF No. 17 at 3. Thus, RPPJ claims it is insulated from liability under La. R.S. 15:703(D). *Id.* However, Plaintiffs' Amended Complaint does not allege *respondeat superior* or vicarious liability against RPPJ.

The sole cause of action against RPPJ is Goldstein's § 1983 *Monell* claim for denial of reasonable medical care to a pre-trial detainee and deliberate indifference to his constitutional right to receive adequate health care. ECF No. 19 at 57.[2] Plaintiffs claim that RPPJ knew and were on notice that detainees and inmates of the Rapides Parish Detention Center were being denied adequate medical care and attention. ECF 19 at 58. Plaintiffs claim that Nurse Doe violated Goldstein's constitutional right to adequate medical care by ignoring his medical condition,

---

[2] RPPJ also seeks dismissal of any claims of Larkai against RPPJ as the Amended Complaint (ECF No. 15) still collectively prays for the imposition of liability ". . . against all Defendants, jointly, severally, and/or *in solido* . . . ." ECF No. 17 at 1. Plaintiffs concede their sole claim against RPPJ is Goldstein's *Monell* claim. ECF No. 19 at 57. Thus, RPPJ's Motion to Dismiss (ECF Nos. 8, 20) should be GRANTED IN PART to the extent they seek dismissal of any claims of Larkai against RPPJ.

health complaints, and repeated requests for medical attention, returning him to his cell without food, water, or medical attention. *Id.*

Plaintiffs allege RPPJ did not and has not changed its policies and practices for assessing, proving, and responding to health concerns and requests for medical attention by detainees and inmates. *Id.* Plaintiffs further allege that at the time of Goldstein's detainment at Rapides Parish Detention Center (Center 1) ("DC-1"), RPPJ knew, or should have known, of continuing serious deficiencies in policies, practices, and procedures at the jail related to assessing, providing, and responding to health conditions and health care requests of detainees and inmates. *Id.* at 59. Plaintiffs claim RPPJ knew, or should have known, that the staff (including medical staff) at DC-1 were inadequate or unwilling to protect or provide adequate treatment, and that the staff was inadequately trained or supervised. *Id.*

Plaintiffs allege RPPJ was deliberately indifferent to Goldstein's medical needs and/or was grossly negligent in violation of La. R.S. 15:703(D), due to its: (1) failure to maintain DC-1 in accordance with "Basic Jail Guidelines;" (2) decision to terminate the RPSO's contract with Nortec leaving the sheriff's office understaffed and ill-equipped to handle the needs of DC-1 detainees/inmates; and (3) failure to appoint a physician to attend detainees and inmates confined in DC-1 in accordance with La. R.S. 15:703. *Id.* at 59.

Plaintiffs claim Nurse Jane Doe and DC-1 staff were inadequately trained to recognize an individual, like Goldstein, may be suffering from a stroke or other serious medical condition requiring medical attention. *Id.* at 60. Plaintiffs allege a

12

series of unresolved, systemic deficiencies show the existence of a *de facto* policy of Wood and DC-1 staff (including its medical staff) failing to adequately assess, treat, and respond to health conditions, complaints, and requests for medical attention by inmates and detainees. *Id.* Plaintiffs allege that as a result of the *de facto* policies and practices, Wood and the RPPJ ignored detainees' serious medical conditions and requests for medical attention, did not provide Goldstein access to reasonable medical care, and ignored his repeated requests for medical care and ignored his high blood pressure. *Id.* at 60-61.

Plaintiffs claim RPPJ failed to adequately staff medical personnel at DC-1 and failed to adequately train its employees, including Nurse Jane Doe. *Id.* at 61. As a result of *de facto* policies and practices permitted by Wood and RPPJ, DC-1 staff (including medical staff) was not adequately trained and/or supervised and/or not adequately staffed to address the health care needs of detainees and inmates. *Id.* Plaintiffs allege RPPJ chose to ignore detainees' and inmates' serious health conditions and requests for medical attention, resulting in deliberate indifference. *Id.* Plaintiffs claim the alleged actions and inactions of RPPJ constituted gross negligence or willful misconduct in the performance of its duties and obligations imposed by La. R.S. 15:703, which was a substantial factor in causing Goldstein's injuries and damages. *Id.* at 62.

The United States Court of Appeals for the Fifth Circuit has recognized that municipalities or supervisors may face liability under § 1983 where they breach duties imposed by state or local law. *O'Quinn,* 773 F.2d at 609 (citations omitted); *see*

13

also *Salvagio v. Doe*, No. 13-5182, 2013 WL 6623921, at *2–3 (E.D. La. Dec. 16, 2013) (state law determines whether a particular governmental entity has an obligation or policymaking authority). By law, the sheriff is charged with operating the parish jail and ensuring that the inmates receive proper care. *Oladipupo v. Austin*, 104 F. Supp.2d 626, 641 (W.D. La. 2000) (citing La. R.S. § 15:704); *Langley v. City of Monroe*, 582 So.2d 367, 368 (La. App. 2d Cir. 1991) (citations omitted).

However, the *parish* is responsible for financing and physically maintaining the jail. *Salvagio,* 2013 WL 6623921, at *2–3; *see also O'Quinn,* 773 F.2d at 609; *Fairley v. Stalder*, 294 Fed. Appx. 805, 812 (5th Cir. 2008) ("[D]ay-to-day operation of the parish prison is the responsibility of the local sheriff, and that financing and maintenance are the responsibility of the local governing authority . . ."). Furthermore, the parish is responsible for either appointing a physician or contracting with a health care provider to attend to prisoners who are confined in parish jails. *See Thompson v. Ackal*, No. 15-2288, 2016 WL 1371192, at *4–5 (W.D. La. Feb. 2, 2016), R&R adopted, 2016 WL 1370597 (W.D. La. Apr. 5, 2016); *see also* La. R.S. 15:703. Thus, the parish is responsible for all expenses of providing medical treatment to prisoners. *O'Quinn*, 773 F.2d at 609 (citing *Amiss v. Dumas*, 411 So.2d 1137, 1141 (La. App. 1st Cir. 1982); *Arce v. Louisiana*, No. 16-14003, 2016 WL 7407223, at *4 (E.D. La. Dec. 22, 2016) (to the extent the jail's deficiencies are attributable solely to a lack of adequate funding, the parish's obligation to fund the jail could be implicated and the parish might be held responsible).

14

Deliberate indifference in the context of a prisoner's underlying Eighth Amendment medical claim is different from deliberate indifference in the context of municipal culpability. To establish the underlying claim, the plaintiff must establish that a municipal employee acted with subjective deliberate indifference to the prisoner's medical needs. *See Olabisiomotosho v. City of Houston,* 185 F.3d 521, 526 (5th Cir. 1999). To hold the municipality liable – as alleged here, the plaintiff must show that the employee's act resulted from a policy or custom the municipality maintained with objective deliberate indifference to the plaintiff's constitutional rights. *Id.*

Additionally, to prevail on a municipal liability claim under § 1983, a claimant must establish: a policy maker, an official policy, and a violation of a constitutional right whose moving force is the policy or custom. *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001). A fundamental requirement for any § 1983 claim is the existence of a constitutional violation. *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). "[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur County,* 245 F.3d 447, 457 (5th Cir. 2001). To show that the right to medical care has been violated, a plaintiff must establish that "the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference." *Hare v. City of Corinth,* 74 F.3d 633, 650 (5th Cir. 1996).

15

To establish deliberate indifference, a plaintiff must show that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't. of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiffs must also show that municipal policy was the moving force behind the violation. *See Piotrowski,* 237 F.3d at 578. Here, unlike the allegations in *Dugas*,[3] Plaintiffs allege that the RPSO terminated its contract with Nortec on December 31, 2021; that RPPJ failed to appoint a physician to attend to the medical needs of detainees and inmates, including Goldstein, confined in the Rapides Parish Detention Centers pursuant to La. R.S. 15:703(D); and that there was no appointed physician to attend to Goldstein's medical needs on July 7, 2022. ECF No. 19 at 43. Plaintiffs further allege RPPJ failed to provide adequate funding to RPSO to help cover the cost of medical care for detainees and inmates incarcerated at the Rapides Parish Detention Centers that was previously provided by Nortec, leaving RPSO underfunded and unable to provide adequate healthcare to detainees and inmates in 2022. *Id.*

---

[3] In *Dugas*, the plaintiffs did not allege the police jury had any role in the policy, pattern, practice or custom of allegedly unconstitutional arrests, and the actions complained of were taken by the sheriff's office and police department, rather than the police jury. *See Dugas,* 2017 WL 4238770, at *3. *Dugas* found that parish governments cannot be held vicariously liable under *Monell* for the actions of the sheriffs and his deputies or for the allegedly wrongful arrests. *Id.* However, concerning a parish government's *Monell* liability for alleged policies related to its duties under La. R.S. 15:703, *Dugas* is inapposite.

16

Plaintiffs further allege a *de facto* policy by RPPJ of knowing of the systemic deficiencies pertaining to the staffing and inadequate medical treatment to prisoners yet failing to appoint a physician in breach of its duty under La. R.S. 15:703. And although Plaintiffs allege Goldstein was seen by Nurse Jane Doe, it is also alleged that there was no contract in place at the time Goldstein was a pretrial detainee and that no physician had been appointed otherwise. Goldstein alleges that but for RPPJ failing to appoint a physician or maintain the contract, his stroke would have been detected and treated. Further, there are no claims against RPPJ for vicarious liability.

Construing the allegations liberally in their favor and accepting them as true, Plaintiffs sufficiently allege an Eighth Amendment deliberate indifference claim. Goldstein alleges he was suffering from a stroke, that his symptoms and complaints were repeatedly not treated and were ignored, and that he was returned to his holding cell. And the allegations, construed liberally in favor of Plaintiffs, state a § 1983 *Monell* claim against RPPJ for allegations of inadequate medical care purportedly received by Goldstein at DC-1, resulting from the alleged *de facto* policies of RPPJ. Whether Plaintiffs can ultimately prove these claims is a different substantive issue. Dismissal however is unwarranted at this stage. Thus, RRPJ's Motions to Dismiss (ECF Nos. 8, 20) should be denied in part as to Goldstein's § 1983 *Monell* claim against RPPJ.

III.  Conclusion

Because Plaintiffs state a viable § 1983 claim against RPPJ under *Monell*, RPPJ's Motions to Dismiss (ECF Nos. 8, 20) should be DENIED IN PART.  Because Goldstein's *Monell* claim is the sole claim against RPPJ, RPPJ's Motions to Dismiss (ECF Nos. 8, 20) should be GRANTED IN PART to the extent they seek dismissal of any claims by Larkai against RPPJ.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this __9th__ day of March 2024.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE